Thomas Campisi v. Commissioner.
Campisi v. Commissioner
Docket No. 31879.
United States Tax Court
1951 Tax Ct. Memo LEXIS 23; 10 T.C.M. (CCH) 1151; T.C.M. (RIA) 51366; December 10, 1951
*23 When petitioner fails to appear and contest respondent's determination of deficiencies and penalties (other than the penalty under section 293 (b), I.R.C.), as to which petitioner had the burden of proof, such deficiencies and penalties will be affirmed for failure of proof of error. The charge of fraud, as to which respondent had the burden of proof, is sustained on evidence adduced by respondent. John E. Mahoney, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax, victory tax, and penalties as follows: Year
Penalty
Penalty Section
Penalty Section
Ended
Deficiency
Section 293(b)
294(d)(1)(A)
294(d)(2)
6/30/44
$17,767.83
$8,883.92
$129.01
$ 83.68
6/30/45
2,048.76
1,024.38
150.88
103.46
The hearing was held on October 2, 1951, and evidence, consisting of oral testimony and exhibits, was received. The petitioner defaulted and did not appear at the hearing, whereupon the respondent moved to dismiss the proceeding because of the petitioner's failure to prosecute as to all items on which petitioner had the burden *24 of proof, and that an order be entered for deficiencies in income tax, victory tax and penalties as follows: Year
Penalty Section
Penalty
Ended
Deficiency
294(d)(1)(A)
Section 294(d)(2)
6/30/44
$17,767.83
$129.01
$ 83.68
6/30/45
2,048.76
150.88
103.46
The respondent, on whom rested the burden of proof as to fraud, proceeded with the introduction of evidence to sustain the charge of fraud. Findings of Fact Petitioner is an individual with residence at Newark, New Jersey. The returns for the periods here involved were filed with the collector of internal revenue for the fifth district of New Jersey. On March 9, 1939, the petitioner was sentenced to a term of three years and a $1,000 fine on the criminal charge of removal of untaxed liquor. The petitioner commenced serving his sentence on January 2, 1940, and was paroled on April 22, 1941. From April 22, 1941 until January 26, 1944, the petitioner was under the constant jurisdiction and supervision of the United States Probation Officer. During the period of the petitioner's parole, he made monthly signed reports and those signed reports contained statements of the amounts of his income. *25 Within two weeks of the incarceration of the petitioner, and on January 15, 1940, petitioner's wife, Christine Campisi, applied for relief to the Board of Children's Guardians of the State of New Jersey (now the State Board of Child Welfare for the State of New Jersey), to support their four children. At that time, the petitioner's wife, under oath, declared that she and the petitioner had no assets or funds. This relief organization paid Christine Campisi $55 per month until April, 1941, when relief was revoked because the petitioner was released from prison. Thereafter, and until January, 1944, the petitioner, in his signed monthly reports to the probation officer, declared that he had no bank accounts, postal savings, building and loan accounts or any assets other than the wages he earned. In his report for June, 1941, he stated that he borrowed from Madeline Delapela the sum of $350 and from his mother, the sum of $300. In his report for March, 1942, the petitioner stated that he had borrowed $300. In his statement for June, 1942, the petitioner stated that he had borrowed $700. In his statement in the report dated March 1, 1943, petitioner stated that he borrowed $300 to pay *26 for doctor bills, children's clothing, and to repair his truck. The petitioner borrowed on insurance policies issued by the Prudential Insurance Company of America the sum of $107 on May 24, 1941, which was repaid in installments, the final one being made February 3, 1943, and the sum of $183.88 on February 3, 1943, which was not repaid in installment payments until January 21, 1944. On February 12, 1943, the petitioner, in an endeavor to compromise his fine of $1,000 for $200, stated under oath in an affidavit to the Department of Justice, his financial condition as follows Assets
1 truck and milk route purchased for
$1,000
(no value given at time of affidavit)
Cash
225
$1,225
Liabilities
Chattel mortgage on truck and business
$ 600
Owed Prudential Life Insurance Co.
181
Owed his mother, Mrs. Fortunata
200
$ 981 He also stated that his monthly rent was $55, with earnings of $60 to $65 per week, which were used to support his family. The above represented all the assets of whatever kind, owned by him or held in trust for him. The petitioner stated in his signed monthly statements to the probation officer that he earned the following: 1941
December
$ 207
1942
January
$ 251
February
302
March
400
April
313
May
368
June
318
Total Earnings Fiscal Year
Ended June 30, 1942
$2,159
July
283
August
280
September
263
October
305
November
272
December
272
Total Earnings in 1942
$3,627
1943
January
$ 243
February
248
March
280
April
252
May
268
June
272
Total Earnings Fiscal Year
Ended June 30, 1943
$3,238
July
268
August
289
September
278
October
287
November
288
December
312
Total Earnings in 1943
$3,285
1944
January
$ 210
Total Earnings Reported (un-
complete) for Fiscal Year
Ended June 30, 1944
$1,932
*27 The first income tax return ever filed by the petitioner was for the period July 1, 1942 to June 30, 1943, wherein he showed a net profit from the milk, cheese and oil business in the amount of $3,448.90. He also reported income of $2,500 as "Commissions on sales of volume". These items totaled $5,948.90. On April 28, 1941, the petitioner, in answering questions as to his financial status for the Selective Service System Local Board No. 37, Essex County, stated that his family was on relief and that he owned no property either for himself or in trust for him. During the taxable year July 1, 1943 to June 30, 1944, the petitioner purchased the following real properties for cash: 5 Stanley Road, South Orange, N.J…. $12,000 293-5 - 14th Avenue, Newark, N.J…. 22,500 In 1944, but prior to the time the petitioner purchased his residence at 5 Stanley Road, South Orange, New Jersey, on February 28, 1944, the petitioner advanced to his sister, Providenzia Campisi, the sum of between $3,500 and $3,700 to be used for the purchase of property located at 156 Hunterdon Street, Newark, New Jersey. In the taxable year ending June 30, 1944, the petitioner's bank account in the West *28 Side Trust Co. of Newark, New Jersey, increased $1,203.88. In the taxable year ending June 30, 1944, the petitioner's bank account in the Howard Savings Institution of Newark, New Jersey, increased $500. During the taxable year ending June 30, 1944, the petitioner purchased United States Savings Bonds of a face value of $550, which cost him $412.50. The petitioner's living expenses during the taxable year ended June 30, 1944, were $5,000. Prior to the commencement of the taxable year ended June 30, 1944, and more particularly from January 1, 1940 until February 12, 1943, the petitioner and his wife, Christine, had no assets, or property free from debt. They were in debt and their net worth prior to the commencement of such taxable year, i.e., July 1, 1943, was zero. Prior to the commencement of the taxable year ended June 30, 1944, the wife of the petitioner, Christine Campisi, had no assets or monies, or earnings whatsoever, and any assets or monies acquired by her were derived and obtained from her husband, the petitioner. During the taxable year ended June 30, 1944, the assets acquired, net increase in liabilities, and the increase in net worth or additional profits *29 from petitioner's business were as follows: Total increase in assets during the
fiscal year ended June 30, 1944
$40,216.38
Net increase in liabilities during the
fiscal year ended June 30, 1944
4,200.00
Increase in net worth for the fiscal
year ended June 30, 1944
36,016.38
Estimated living expenses
5,000.00
Total income for the year as adjusted
41,016.38
Less other income
3,900.00
Net profit from business as adjusted
37,116.38
Net profit from business per return
4,828.45
Additional net profit from business
$ 32,287.93
For the taxable year ended June 30, 1944, the petitioner filed an individual income tax return whereby he reported a net profit from business of $4,828.45 and other income from "Commissions on sales for volume" of $3,900, and an income tax net income of $8,578.45 and a victory tax net income in the amount of $8,728.45. The petitioner understated the amount of his net income for the taxable year ended June 30, 1944, by reason of his failure to report in his income tax return additional net profit from business in the amount of $32,287.93 realized by him duringthe year. The petitioner realized an income tax net income in the amount *30 of $40,866.38 and a victory tax net income in the amount of $41,016.38 for the taxable year ended June 30, 1944. During the taxable year July 1, 1944 to June 30, 1945, the petitioner made and paid for the following real estate improvements: 5 Stanley Road, South Orange, N.J.
$7,361.59
293-5 - 14th Avenue, Newark, N.J.
2,889.73
During the taxable year ended June 30, 1945, the petitioner's bank balance in the Fidelity Union Trust Co. of Newark, New Jersey, increased $2,280.15. During the taxable year ended June 30, 1945, the petitioner's bank balance in the Howard Savings Institution of Newark, New Jersey, increased $505.64. During the taxable year ended June 30, 1945, the petitioner invested $1,275 in the American Machine Buttonhole Co. of 501 15th Avenue, Newark, New Jersey. The petitioner's living expenses during the taxable year ended June 30, 1945, were $5,000. During the taxable year ended June 30, 1945, the assets acquired, net increase in liabilities, the amount of income reported and the increase in net worth or additional profits from petitioner's business were as follows: Net increase in assets during the fiscal
year ended June 30, 1945
$11,112.44
Net increase in liabilities during the
fiscal year ended June 30, 1945
300.00
Increase in net worth for the fiscal year
ended June 30, 1945
10,812.44
Estimated living expenses
5,000.00
Total income for the year as adjusted
15,812.44
Less other income
2,700.00
Net profit from business as adjusted
13,112.44
Net profit from business per return
7,585.88
Additional net profit from business
$ 5,526.56
*31 For the taxable year ended June 30, 1945, the petitioner filed an individual income tax return whereby he reported a net profit from business of $7,585.88 and other income from "Commissions" of $2,700 totaling $10,285.88, and a net income in the amount of $9,785.88. During both the taxable years here involved the petitioner failed to keep any books or records other than his bank account in the Fidelity Union Trust Company. The petitioner understated the amount of his net income for the taxable year ended June 30, 1945, by reason of his failure to report in his income tax return additional net profit from business in the amount of $5,526.56 realized by him during such year. The petitioner realized a net income in the amount of $15,312.44 for the taxable year ended June 30, 1945. The income tax returns for the taxable years ended June 30, 1944, and June 30, 1945, were false and fraudulent in that the petitioner knowingly and wilfully and with fraudulent purpose and intent to evade taxes in the preparation and filing of each of the returns, understated his income for those years by failing to report the amount of $32,287.93 and $5,526.56, respectively. The deficiencies in *32 income tax and victory tax for the taxable year ended June 30, 1944, i.e., $17,767.83, and in income tax for the taxable year ended June 30, 1945, i.e., $2,048.76, are due in whole or in part to fraud with intent on the part of the petitioner to evade and defeat taxes. Opinion VAN FOSSAN, Judge: The burden of proof of error in respondent's action in determining deficiencies rests on the petitioner who challenges them. Since petitioner did not appear at the hearing of this case, and no evidence was offered in any way questioning the correctness of respondent's determination of the deficiencies, the presumption of correctness accorded to his action ripens into a conclusive presumption and judgment must be given to the Government, here represented by respondent, for such deficiencies. The same is true of the penalties, excepting only the 50 per cent penalty for fraud, and judgment for such penalties must accordingly be given to respondent. Not so as to the charge of fraud. Under the statute, the burden of proof of the existence of fraud is placed on the Government. Respondent accordingly proceeded with the proof and established the facts found above. The ultimate findings above *33 to the effect that petitioner filed false nad fraudulent returns with intent to evade taxes are dispositive of the matter and lead to a conclusion that respondent must be sustained in all respects, both as to the deficiencies and all penalties. Decision will be entered for the respondent.